IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RICHARD G. TATUM, individually and<br>on behalf of a class of all other persons<br>similarly situated, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:02CV00373 |
| | ) | |
| R.J. REYNOLDS TOBACCO COMPANY; | ) | |
| R.J. REYNOLDS TOBACCO HOLDINGS, | ) | |
| INC.; THE R.J.R. EMPLOYEE BENEFITS | ) | |
| COMMITTEE OF THE R.J. REYNOLDS | ) | |
| TOBACCO COMPANY CAPITAL | ) | |
| INVESTMENT PLAN; THE R.J.R. PENSION | ) | |
| INVESTMENT COMMITTEE OF THE R.J. | ) | |
| REYNOLDS TOBACCO COMPANY | ) | |
| CAPITAL INVESTMENT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

TILLEY, District Judge

        This action arises from a dispute regarding the alleged mismanagement of a

retirement plan and is governed by the Employee Retirement Income Security Act

of 1974 ("ERISA").  The matter is currently before the Court on Defendants'

Motion to Dismiss (Doc. # 78).  For the reasons set forth below, the Motion to

Dismiss is granted in part and denied in part.

I.

The allegations of the Second Amended Compliant, in the light most

favorable to Plaintiff Richard G. Tatum, are as follows. Prior to June 15, 1999, RJR Nabisco Holdings Corp. ("RJR Nabisco") was the parent company of R.J. Reynolds Tobacco Company ("RJR Tobacco") and Nabisco Holdings Corp. ("Nabisco Holdings"). RJR Tobacco and Nabisco Holdings engaged in the manufacture and sale of tobacco and food products, respectively. RJR Nabisco owned all or most of RJR Tobacco's and Nabisco Holdings' stock.

Employees of RJR Nabisco and its subsidiaries had the option to participate in the RJR Nabisco Capital Investment Plan (the "Original Plan"), a retirement plan governed by ERISA and established pursuant to Section 401(k) of the Internal Revenue Code. The Original Plan had a variety of investment options, including the RJR Nabisco common stock fund and the Nabisco Holdings common stock fund (collectively, the "Nabisco stock funds"). As an employee of RJR Tobacco, Mr. Tatum participated in the Original Plan and invested in the Nabisco stock funds.

Around March 1999, RJR Nabisco decided to separate its tobacco and food businesses by spinning off RJR Tobacco as a separate company. R.J. Reynolds Tobacco Holdings, Inc. ("RJR Tobacco Holdings") was formed as the new parent company of RJR Tobacco to effectuate the separation. It was determined that the Original Plan would be divided into two separate retirement plans following the spin-off – one for RJR Tobacco employees, the R.J. Reynolds Tobacco Company Capital Investment Plan (the "Tobacco Plan" or "Plan"), and one for Nabisco Holdings employees.

2

In or about March 1999, officers, employees, and/or agents of RJR Tobacco and RJR Tobacco Holdings (collectively, the "Company Defendants") decided that: (1) the investment options for participants in the Tobacco Plan would remain the same, except that the Nabisco stock funds would be frozen from any active investment; (2) the Nabisco stock funds would remain frozen for approximately six months; (3) the Tobacco Plan would divest itself of the Nabisco stock funds approximately six months in the future; and (4) during the frozen period, Tobacco Plan participants would be informed that they could sell their Nabisco stock. Officers, employees, and/or agents of the Company Defendants notified Tobacco Plan participants about the decision to freeze the Nabisco stock funds on or about March 31, 1999, and about the decision to divest those funds six months after the spin-off date in May or June 1999.

On June 15, 1999, RJR Tobacco was spun off to the shareholders of RJR Nabisco as a separate company. Simultaneously, RJR Nabisco was renamed Nabisco Group Holdings Corp. ("Nabisco Group Holdings") and the Company Defendants were severed from the Nabisco corporate group. On or about June 14, 1999, the Original Plan had been amended to create the Tobacco Plan. The Tobacco Plan included an amended section 4.03 that listed available investment options and prohibited further investment contribution or reallocation into the Nabisco stock funds. Section 4.03 read as follows:

> Separate Funds. The Trustee shall maintain the following separate Investment Funds within the Trust Fund: the Interest Income Fund,

the Nabisco Common Stock Fund, the Nabisco Group Holdings Common Stock Fund, the RJR Common Stock Fund, the Total Stock Market Fund, the Total International Fund, the Conservative Growth Fund, the Moderate Growth Fund and the Growth Fund. All Investment Funds under the Plan are active Funds; provided, however, the Nabisco Common Stock Fund and the Nabisco Group Holdings Common Stock Fund are frozen and, as of the Effective Date, Participants are prohibited from investing contributions or reallocating amounts held under the Plan to such Funds. In addition, the Trustee shall maintain any other Investment Funds as are designated by the RJR Pension Investment Committee.

(Doc. # 32, Ex. B, Tobacco Plan § 4.03.)[1] At the time the Nabisco stock funds were frozen, Nabisco Group Holdings' stock was selling at approximately $21 per share and Nabisco Holdings' stock was selling at approximately $42 per share. The market value of the Nabisco stocks declined continuously until the eventual divestiture date.

In October 1999, despite the declining value of the Nabisco stocks, the Company Defendants decided that the decision made prior to the spin-off to divest the Nabisco stock funds would not be reconsidered. In making this decision, the Company Defendants acted through their officers, employees, and/or agents, in a

---

[1] Generally, only allegations in the Complaint are considered in deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Documents extraneous to the Complaint, however, may be considered in certain circumstances without converting a Rule 12(b)(6) motion into a motion for summary judgment. Specifically, documents that are "integral to and explicitly relied on in the complaint" may be considered if the authenticity of such documents is not in question. Phillips v. LCI Intern, Inc., 190 F.3d 609, 618 (4th Cir. 1999). For the reasons discussed in further detail in the December 10, 2003 Memorandum Opinion, the Tobacco Plan documents satisfy the requirements set forth in Phillips and will be considered in deciding Defendants' Motion to Dismiss. (See Doc. # 21, Mem. Op. at 9-12.)

fiduciary capacity, without input from the Plan's designated fiduciaries, the RJR Pension Investment Committee and the RJR Employee Benefits Committee (collectively, the "Committee Defendants").

During the same time frame, Tobacco Plan participants were informed that the frozen Nabisco stocks would be eliminated as plan investment options on January 31, 2000. On November 18, 1999, Section 4.03 of the Plan was amended to reflect the changed investment options effective February 1, 2000. (Doc. # 32, Ex. C, Amended Tobacco Plan § 4.03.) Under this amendment, the RJR Pension Investment Committee retained its discretion to designate other investment funds. (Id.)

At no time during the period from June 14, 1999 through January 31, 2000 did the Committee Defendants reconsider the March 1999 decisions made by the Company Defendants to limit the Tobacco Plan participants' active investment options to a single individual company stock fund, the RJR Common Stock Fund, or to divest the Nabisco stock funds. The Committee Defendants also failed to consider delaying the divestment of the Nabisco stock funds to allow the stock price to rebound. Further, at no time during the period from June 14, 1999 through January 31, 2000 did the Committee Defendants or any officers, employees, and/or agents acting on behalf of the Company Defendants consult with market analysts, investigate the prospects of the Nabisco stocks, or otherwise question the prudence of implementing those March 1999 decisions. On January

5

31, 2000, the Tobacco Plan sold all Nabisco stocks at a substantial loss.  The market value of the Nabisco stocks decreased significantly between the June 15, 1999 spin-off and the January 31, 2000 stock sale.  Nabisco Group Holdings' stock fell 60 percent to approximately $8.50 per share; Nabisco Holdings' stock fell nearly 30 percent to approximately $30 per share.

Mr. Tatum objected to the Tobacco Plan's sale of the Nabisco stocks and requested that the Plan maintain its Nabisco holdings to allow the stocks to rebound from their record low market values.  The Plan fiduciaries refused to allow Mr. Tatum and others to maintain the Nabisco stocks allocated to their accounts.  Throughout the time period from the June 15, 1999 spin-off through the January 31, 2000 divestiture, market analysts were advising investors to buy or hold Nabisco stocks despite the declining market value and predicting that the Nabisco stocks would rebound, which they did.  By late June 2000, the price of Nabisco Group Holdings' stock was approximately $30.00 per share and the price of Nabisco Holdings' stock was approximately $55.00 per share.

II.

In May 2002, Mr. Tatum instituted this action on behalf of himself and a class of similarly situated Tobacco Plan participants pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), seeking to recover losses to the Tobacco Plan resulting

6

from the January 31, 2000 sale of the Nabisco stocks.[2]  Mr. Tatum alleges that Defendants breached their fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by failing to reconsider and investigate the decision to eliminate the Nabisco stock funds from the Tobacco Plan.

On July 29, 2002, in accordance with the briefing schedule agreed to by the parties and approved by the Court, Defendants filed a Motion to Dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. # 6.)  Defendants asserted the following two grounds in support of their motion: (1) Mr. Tatum failed to state a claim under ERISA because the actions about which he complains were not subject to ERISA's fiduciary duty provisions; and (2) even if the actions had been subject to a fiduciary duty under ERISA, the amended Complaint fails to state a claim for breach of that duty.

On December 10, 2003, a Memorandum Opinion and Judgment were issued granting the Motion to Dismiss for failure to allege any fiduciary action on the part of Defendants that resulted in losses to the Plan.  (Doc. ## 21, 22.)  The Court did not address Defendants' second argument.  On December 14, 2004, the United States Court of Appeals for the Fourth Circuit reversed this Court's holding, finding that Mr. Tatum had alleged sufficient fiduciary action to support his breach of fiduciary duty claim, and remanded the case for further proceedings.  <u>See</u> <u>Tatum v.</u>

---

[2]  Mr. Tatum's initial Complaint was filed on May 13, 2002 (Doc. # 1) and his First Amended Complaint was filed on May 23, 2002 (Doc. # 3).

7

R.J. Reynolds Tobacco Co., 392 F.3d 636 (4th Cir. 2004).

Defendants filed their second Rule 12(b)(6) Motion to Dismiss on January 20, 2005, seeking dismissal on the ground previously raised but not addressed and asserting three additional grounds. (Doc. # 31.) Specifically, Defendants moved to dismiss because: (1) Mr. Tatum sought individual relief, not relief for the benefit of the Plan as a whole, and therefore cannot state a claim under ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2); (2) the Committee Defendants are not "persons" as defined under ERISA § 3(9), 29 U.S.C. § 1002(9), and therefore cannot be sued for breach of fiduciary duty; (3) Mr. Tatum failed to adequately plead in the Amended Complaint that the Company Defendants are fiduciaries of the Tobacco Plan; and (4) Mr. Tatum's breach of fiduciary duty claim improperly relied solely on hindsight and on predictions of unnamed market analysts as to the future performance of the Nabisco stocks.

On February 9, 2005, Mr. Tatum filed a Motion to Defer Ruling on Issues Raised in Defendants' Second Motion to Dismiss. (Doc. # 34.) This action was stayed for 60 days on February 6, 2006 to allow parties to engage in limited discovery concerning the following issues: (1) the discretionary authority or control exercised by the Company Defendants with respect to the management and administration of the Tobacco Plan; and (2) Defendants' specific acts and/or failures to act in evaluating whether to retain or sell the Nabisco stocks. (Doc. # 43.) The limited discovery period was completed on April 7, 2006 and each party

8

timely filed supplemental briefs. (Doc. ## 49, 50, 54.) In his Supplemental Response to Defendants' second Motion to Dismiss, Mr. Tatum presented factual allegations concerning the fiduciary status of the Company Defendants learned during the limited discovery period and requested either that they be considered in conjunction with the First Amended Complaint or that leave be granted to file a second amended complaint. (Doc. # 49.)

On June 5, 2006, Mr. Tatum filed a Motion to Amend Complaint to Add Individual Party Defendants. (Doc. # 51.) Defendants filed a brief in opposition to Mr. Tatum's Motion to Amend (Doc. # 56) and filed a Motion to Strike (portions of Plaintiff's reply brief in support of his Motion to Amend), or, in the alternative, for Leave to File a Surreply (Doc. # 66). On January 12, 2007, Mr. Tatum filed a Motion for a Status Conference pursuant to Rule 16(a) of the Federal Rules of Civil Procedure. (Doc. # 72.)

On March 7, 2007, Mr. Tatum's request to amend his complaint was granted and the proposed Second Amended Complaint attached to his Supplemental Response to Defendant's Second Motion to Dismiss (Doc. # 49, Ex. C) was considered filed as of that date. (Doc. # 74.) Because the First Amended Complaint was superseded by the Second Amended Complaint, all other pending motions were denied as moot. (Id.)

Defendants filed their third Rule 12(b)(6) Motion to Dismiss on April 6, 2007, reasserting the following three grounds: (1) the Committee Defendants are

9

not appropriate defendants in a breach of fiduciary action under ERISA § 409(a), 29 U.S.C. § 1109(a); (2) Mr. Tatum fails to adequately plead in the Second Amended Complaint that the Company Defendants are fiduciaries of the Tobacco Plan; and (3) Mr. Tatum fails to plead a breach of fiduciary duty. (Doc. # 78.)[3] Mr. Tatum has filed a response in opposition (Doc. # 84), Defendants have replied (Doc. # 87), and this matter is ripe for consideration.

III.

A motion to dismiss for failure to state a claim is intended to test the legal sufficiency of the complaint, not to decide the merits of the action. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991); Food Lion, Inc. v. Capital Cities/ABC, Inc., 887 F. Supp. 811, 813 (M.D.N.C. 1995). In considering a Rule 12(b)(6) motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

---

[3] Defendants did not reassert the ground that Mr. Tatum failed to state a claim under ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2), because he seeks individual relief rather than relief for the benefit of the Plan as a whole.

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, No. 05-1126, 2007 WL 1461066, at *8 (U.S. May 21, 2007) (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Id. (internal citations omitted); see also Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002) (A plaintiff must "set forth facts sufficient to allege each element of his claim.")

IV.

Congress enacted ERISA in 1974 to "assur[e] the equitable character of [employee benefit plans] and their financial soundness," and "to protect . . . the interests of participants in employee benefits plans and their beneficiaries" ERISA § 2, 29 U.S.C. § 1001. ERISA protects employee benefit plans by, inter alia, "setting forth certain general fiduciary duties applicable to the management of both pension and non-pension benefit plans." Varity Corp. v. Howe, 516 U.S. 489, 496, 116 S. Ct. 1065, 1070 (1996).

ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). In doing so, the fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent

11

man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). The duties charged to an ERISA fiduciary have been characterized as the "highest known to law." See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc., 793 F.2d 1456, 1468 (5th Cir. 1986) (quoting Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

A.

As a threshold issue, Mr. Tatum argues that Defendants improperly raised new grounds not included in their initial Rule 12(b)(6) motion. Specifically, Mr. Tatum asserts that Defendants' arguments concerning the propriety of suing the Committee Defendants and the adequacy of the fiduciary status allegations have been waived.

Successive motions to dismiss are governed by Federal Rules of Civil Procedure 12(g) and 12(h)(2). Rule 12(g) provides in pertinent part:

> If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) . . . .

Fed. R. Civ. P. 12(g). Rule 12(h)(2) provides that "[a] defense for failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted

12

or ordered under Rule 7(a)[4], or by motion for judgment on the pleadings, or at trial on the merits."  Fed. R. Civ. P. 12(h)(2).

Taken together, Rules 12(g) and 12(h)(2) prohibit Defendants from filing a successive Rule 12(b)(6) motion unless it is included in their answer or in a Rule 12(c) motion after pleadings are closed.  These rules are "intended to eliminate unnecessary delays at the pleading stage of a case by avoiding the piecemeal consideration of pretrial motions."  Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 701 (6th Cir. 1978).  Many courts, however, have applied the rules permissively to allow such motions to also be raised at other times. See Stoffels v. SBC Commc'ns, Inc., 430 F. Supp. 2d 642, 648-49 (W.D. Tex. 2006); Fed. Express Corp. v. United States Postal Serv., 40 F. Supp. 2d 943, 948-49 (W.D. Tenn. 1999); Mylan Labs., Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1059 (D. Md. 1991).  "Since the basic purpose of Rule 12(h)(2) probably is to preserve the defenses, rather than to delimit the precise timing of their assertion, this [more permissive] approach seems sound and within the spirit, if not the letter, of the provision."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and

---

[4]  Rule 7(a) provides in pertinent part:

There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under Rule 14; and a third-party answer, if a third-party complaint is served.

Fed. R. Civ. P. 7(a).

13

Procedure § 1392 (3d ed. 2004).

Accordingly, the additional grounds raised by Defendants in their third Motion to Dismiss will be addressed. All issues have been fully briefed and consideration of those issues at this stage of litigation will expedite the resolution of this case originally filed in May 2002. "There is simply no reason to put [Defendants] to the time and expense of filing an answer, or both [Defendants and Mr. Tatum] to the time and expense of addressing an issue to be raised later in a motion for judgment on the pleadings, when [the issues] can easily be resolved now." In re Westinghouse Sec. Litig., No. Civ.A. 91-354, 1998 WL 119554, at *6 (W.D. Pa. Mar. 12, 1998).

B.

Defendants first contend that Mr. Tatum fails to state a claim with respect to the Committee Defendants because they are not proper defendants under ERISA. The RJR Employee Benefits Committee "consist[s] of not less than three persons appointed from time to time by the Compensation Committee" and is tasked with "[t]he general administration of the Plan and the responsibility for carrying out the provisions of the Plan." (Doc. # 32, Ex. B, Tobacco Plan § 10.01(a).) The RJR Pension Investment Committee consists of members who are appointed by the Compensation Committee and "is charged with the responsibility to approve all matters with respect to the funding of the plans, including but not limited to, actuarial assumptions, investment guidelines, and the appointment and

14

removal of investment managers." (Doc. # 32, Ex. B, Tobacco Plan § 10.03.)

Under the terms of the Tobacco Plan, the Committee Defendants "constitute named fiduciaries as such term is defined in ERISA." (Doc. # 32, Ex. B, Tobacco Plan § 10.05(a)). "[T]he term 'named fiduciary' means a fiduciary who is named in the plan instrument . . . ." ERISA § 402(a)(2), 29 U.S.C. §1102(a)(2). This circular definition, however, is not determinative. Section 502(a)(2) of ERISA permits plan participants to seek "appropriate relief under section 409." 29 U.S.C. § 1132(a)(2). Section 409(a), in turn, imposes liability on "[a]ny person who is a fiduciary with respect to the plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries." 29 U.S.C. § 1109(a) (emphasis added). Mr. Tatum's breach of fiduciary duty claim under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), may, therefore, be brought only against a "person." Under ERISA, "[t]he term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." ERISA § 3(9), 29 U.S.C. § 1002(9).

Defendants argue that dismissal is proper with respect to the Committee Defendants because they do not fall within the plain language of the statutory definition of "person." Mr. Tatum counters that plan committees are either "unincorporated organizations" or "associations" that may be held liable for breach of fiduciary duty under ERISA. In support of this contention, however, Mr. Tatum

15

cites two cases that neither discuss unincorporated organizations or associations nor address the discrete question of whether a committee constitutes a "person" under ERISA.  See McGrath v. Lockheed Martin Corp., 48 Fed. App'x 543 (6th Cir. 2002); Graham v. Pactiv Corp. Benefits Comm., 301 F. Supp. 2d 483 (E.D. Va. 2004).

While committees have been named parties in numerous breach of fiduciary duty actions under ERISA, the propriety of their inclusion is an issue of first impression that involves the statutory interpretation of ERISA § 3(9), 29 U.S.C. § 1002(9).  Statutory interpretation "must begin with the language of the statute and the court should not look beyond that language unless there is ambiguity or unless the statute as literally read would contravene the unambiguously expressed legislative intent gleaned from the statute's legislative history."  United States v. Sheek, 990 F.2d 150, 152-53 (4th Cir.1993) (citations omitted); see also Carbon Fuel Co. v. USX Corp., 100 F.3d 1124, 1133 (4th Cir. 1996) ("[W]e begin interpreting a statute by examining the literal and plain language of the statute. Absent explicit legislative intent to the contrary, the statute should be construed according to its plain and ordinary meaning.") (citations omitted); Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482 (4th Cir. 1996) ("[W]e begin by looking at the language of the statute.  If the language is plain and unambiguous, we look no further.") (citations omitted).

Further, in reviewing the statutory language, courts must be mindful that

16

ERISA is a "comprehensive and reticulated statute" that is "the product of a decade of congressional study of the Nation's private employee benefit system." Mertens v. Hewitt Assocs., 508 U.S. 248, 251, 113 S. Ct. 2063, 2066 (1993) (citing Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361, 100 S. Ct. 1723, 1726 (1980)). Courts should, therefore, be "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." Great-West Life & Annuity Co. v. Knudson, 534 U.S. 204, 209, 122 S. Ct. 708, 712 (2002) (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147, 105 S. Ct. 3085, 3093 (1985)). "'The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.'" Russell, 473 U.S. at 147, 105 S. Ct. at 3093 (quoting Nw. Airlines, Inc. v. Transp. Workers Union, 451 U.S. 77, 97, 101 S. Ct. 1571, 1583-84 (1981)). ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" Mertens, 508 U.S. at 254, 113 S. Ct. at 2067 (quoting Russell, 473 U.S. at 146-47, 105 S. Ct. at 3092 (emphasis in original)).

The language of Section 3(9) clearly and unambiguously sets out eleven categories of "persons" subject to personal liability in a breach of fiduciary duty action under ERISA. Given the comprehensive nature of ERISA, the omission of

17

"committee" from that definition cannot be considered simply a drafting oversight. Committees are, therefore, not properly subject to ERISA breach of fiduciary duty claims. Cf. Boucher v. Williams, 13 F. Supp. 2d 84, 93 (D. Me. 1998) (holding that a plan "is not a 'person' as that term is defined by ERISA and is therefore not subject to claims of breach of fiduciary duty."); Swanson v. U.A. Local 13 Pension Plan, 779 F. Supp. 690, 702 (W.D.N.Y. 1991) (holding "that a pension plan is not a proper defendant" because it is not included in the statutory definition of "person"); Adams v. Koppers Co., 684 F. Supp. 399 (W.D. Pa. 1988) (holding that a plan is an improper defendant because "[t]he language of the statute lists a large variety of defendants and does not list plans").

This interpretation is consistent with the legal status of committees, which "[are] not, by [themselves], legal entit[ies] having the capacity to sue or be sued." In re RCN Litig., No. 04-5068 (SPC), 2006 WL 753149, at *5 (D.N.J. Mar. 21, 2006); cf. Doe v. Bayer Corp., 344 F. Supp. 2d 466, 468-69 (M.D.N.C. 2004) ("North Carolina does not confer capacity to sue or be sued on unincorporated parts of corporations") (citing Nelson v. Atl. Coast Line R.R. Co. Relief Dep't, 147 N.C. 103, 60 S.E. 724 (1908)). Accordingly, Defendants' Motion to Dismiss the ERISA breach of fiduciary duty claim against the Committee Defendants is GRANTED.

C.

Defendants next contend that Mr. Tatum fails to adequately plead in the

18

Second Amended Complaint that the sole remaining defendants, the Company Defendants, are fiduciaries of the Tobacco Plan. ERISA defines "fiduciary" as a "person [who] . . . exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets [or] . . . has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This definition of "fiduciary" is drafted "not in terms of formal trusteeship, but in <u>functional</u> terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties - and to damages - under § 409(a)." <u>Mertens</u>, 508 U.S. at 262, 113 S. Ct. at 2071 (emphasis in original) (internal citation omitted).

Defendants first argue that the Second Amended Complaint merely mimics the statutory definition of "fiduciary" and is devoid of any factual allegations that the Company Defendants directly exercised authority or control over the Plan or its assets. This argument is without merit. In addition to incorporating the applicable statutory language, Mr. Tatum makes numerous allegations concerning the authority and control exercised by the Company Defendants. Specifically, Mr. Tatum alleges that the Company Defendants: (1) "exercised authority and control respecting management or disposition of the Plan's assets, including decisions and actions related to the available investment options and divestment of assets," (Doc. # 49, Ex. C, Second Am. Compl. ¶¶ 15-16); (2) determined that after the

19

corporate restructuring and creation of the Tobacco Plan, the Nabisco stock funds would be frozen for six months and thereafter liquidated, (Id. ¶¶ 21-23); (3) "prohibited [Mr. Tatum] and the other participants from directing the investment of new contributions into the Nabisco stock funds or from directing the reallocation of existing plan assets to the [Nabisco] stock funds," (Id. ¶ 25); (4) "decided that the . . . decision to divest the Plan of the Nabisco stock funds would not be reconsidered," (Id. ¶ 27); and (5) "refused to permit [Mr. Tatum] and others to direct the Plan to maintain [the Nabisco stock funds] allocated to their accounts," (Id. ¶ 38).

Defendants further argue that Mr. Tatum impermissibly seeks to hold the Company Defendants liable for the actions of their employees that comprised the Committee Defendants under the doctrine of respondeat superior. In support of this argument, Defendants cite several cases where courts have refused to extend liability to corporate defendants based on acts or omissions of committees or committee members that serve as plan fiduciaries. See Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1325 (9th Cir. 1985) ("Although employees of Pertec serve on the Employee Benefits Committee and the Committee has a fiduciary responsibility in determining claims, this does not make the employer a fiduciary with respect to the Committee's acts."); In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., No. MDL 1500, 02 Civ. 8853(SWK), 2005 WL 563166, at *4 n.5 (S.D.N.Y. Mar. 10, 2005) ("No claims against [AOL Time Warner] for alleged

20

breaches of fiduciary duty by the Administrative Committees, the Investment Committees and the Board of Directors based on the doctrine of respondeat superior will be permitted."); In re Mutual Fund Inv. Litig., 403 F. Supp. 2d 434, 447 n.15 (D. Md., 2005) (holding that the misconduct of fiduciary employees generally may not be imputed to their employer).

Defendants, however, misconstrue the allegations of the Second Amended Complaint. Mr. Tatum does not allege that the Company Defendants are vicariously liable for the acts of their fiduciary employees. Rather, he alleges that the Company Defendants acted, as all business organizations must, through their "officers, employees, and/or agents" as de facto or functional fiduciaries. See Mertens, 508 U.S. at 262, 113 S. Ct. at 2071; see also In re AOL Time Warner, 2005 WL 563166, at *4 n.5 ("ERISA imposes liability only upon named fiduciaries and de facto fiduciaries . . . .") (emphasis added). As outlined above, Mr. Tatum pled specific facts demonstrating that the Company Defendants performed discretionary functions with respect to the Tobacco Plan's management, administration, and disposition of assets. As such, Defendants' Motion to Dismiss the ERISA breach of fiduciary claim against the Company Defendants based on insufficient pleading of fiduciary status is DENIED.

D.

Finally, Defendants contend that Mr. Tatum fails to state a claim for breach of fiduciary duty. To state a claim for breach of fiduciary duty under ERISA, a

21

plaintiff must allege that: (1) the defendant was a plan fiduciary; (2) the defendant's acts or omissions constituted a breach of duty; and (3) that the breach caused harm to the plaintiff. Pegram v. Herdrich, 530 U.S. 211, 225-26, 120 S. Ct. 2143, 2152-53 (2000); Jenkins v. Yager, 444 F.3d 916, 924 (7th Cir. 2006).

1.

Defendants first argue that the Second Amended Complaint is insufficient to support a breach of fiduciary duty claim because it impermissibly relies on hindsight rather than the information available at the time of the divestiture of the Nabisco stock. Because ERISA fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing," ERISA § 404(a)(1)(B) (emphasis added), 29 U.S.C. § 1104(a)(1)(B), their actions are to be "evaluated at the time of investment without the benefit of hindsight," Metzler v. Graham, 112 F.3d 207, 209 (5th Cir. 1997). See also Chao v. Merino, 452 F.3d 174, 182 (2d Cir. 2006) (ERISA fiduciary actions "are not to be judged 'from the vantage point of hindsight.'"); DiFelice v. U.S. Airways, Inc., 397 F. Supp. 2d 758, 773 (E.D. Va. 2005) (The judgments of ERISA fiduciaries "must not be assessed using 20/20 hindsight."). "The focus of the inquiry is what steps the fiduciary took before making the decision to act, and not whether the action succeeded or failed." Ulico Cas. Co. v. Clover Capital Mgmt., Inc., 335 F. Supp. 2d 335 (N.D.N.Y. 2004) (citing Donovan v. Cunningham, 716 F.2d 1455, 1467 (5th Cir.1983)).

Mr. Tatum, however, does not allege that Defendants breached their

22

fiduciary duty based on the performance of the Nabisco stocks subsequent to the January 31, 2000 divestiture. Rather, he alleges that Defendants were blindly following an arbitrary sell date without adequately investigating the prudence of the divestiture decision during the time period when the Nabisco stock funds were frozen. Mr. Tatum specifically outlines various investigative actions Defendants neglected to take prior to the divestiture of the Nabisco stock funds to determine Nabisco's business prospects, including failure to: (1) analyze or obtain any analysis of the food industry or any sector of it; (2) engage in any personal contact with Nabisco's management; (3) review or engage any consultant to review any Nabisco financial statements; (4) consult or receive any reports from any investment advisor, broker, industry analyst, or outside advisor of any kind with regard to Nabisco or its stock; (5) review any brokerage firm's or security analyst's ratings or recommendations regarding Nabisco or its stock; (6) review any financial publications for information regarding Nabisco or its stock; and (7) review any investor's reports for information regarding Nabisco or its stock. (Doc. # 49, Ex. C, Second Am. Compl. ¶ 51.) Defendants' Motion to Dismiss on the basis of an impermissible reliance on hindsight is, therefore, without merit.

2.

Defendants next argue that Mr. Tatum's reliance on the advice of an unstated number of unnamed market analysts ignores the efficient market theory and is an insufficient basis for an ERISA breach of fiduciary duty claim as a matter

23

of law.  The efficient market theory, which usually arises in the context of securities fraud litigation, generally posits that "the pricing mechanisms of organized capital markets efficiently incorporate information; or, in other words, that the prices of securities traded in such markets always reflect all available information."  Carol R. Goforth, "The Efficient Capital Market Hypothesis -- An Inadequate Justification for the Fraud-on-the-Market Presumption," 27 Wake Forest L. Rev. 895, 896 (1992); see also Masters, Mates & Pilots Pension Plan v. USX Corp., 900 F.2d 727, 732 (4th Cir. 1990) ("Adherents to the Efficient Markets Hypothesis consider current market value to be the most accurate measure of asset value.").  Based on this theory, Defendants argue that "the market prices of the Nabisco stocks in January 2000 fully reflected the views of the stock analysts that form the factual predicate for [Mr. Tatum's] fiduciary duty claims."  (Doc. # 79, Defs.' Br. in Supp. of Mot. to Dismiss at 17.)  This argument, however, misconstrues the allegations in Second Amended Complaint.  Mr. Tatum does not allege that the Nabisco stocks were undervalued by the market on January 31, 2000.  Rather, in light of Nabisco's long-term business prospects, he alleges that a prudent investor would have maintained its holdings in the Nabisco stocks instead of selling at such a substantial loss or, at the least, that a prudent fiduciary in the Company Defendants' position would have undertaken some further inquiry into the soundness of their decision prior to acting.  (See Doc. # 49, Ex. C, Second Am. Compl. ¶ 51.)

Defendants fail to cite, and this Court has not found, any cases holding that an ERISA breach of fiduciary claim based in part on market analyst recommendations is insufficient to state a claim as a matter of law.  Even assuming arguendo that market analyst recommendations standing alone are insufficient to support an ERISA breach of fiduciary duty claim, such information is clearly relevant to the overall investment decision.  Market analyst recommendations to buy, hold, or sell a particular stock give notice to plan fiduciaries to investigate the rationale underlying such recommendations and to independently determine the advisability of the contemplated investment decision.

3.

Finally, Defendants argue that Mr. Tatum has not sufficiently pled that the alleged inadequate investigation caused losses to the Tobacco Plan.  "[T]o show that an investment decision breached a fiduciary's duty to act reasonably in an effort to hold the fiduciary liable for a loss attributable to this investment decision, a plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan."  Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995) (citing Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 279 (2d Cir.1992)).  "In order to establish this causal link, a plaintiff must demonstrate that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident."  Id. at 1460 (citation omitted).

Mr. Tatum has clearly pled sufficient facts in support of the causation

25

element of an ERISA breach of fiduciary claim.  In light of the numerous investigative actions Defendants allegedly failed to undertake, Mr. Tatum asserts that "a prudent investor who held Nabisco stock as long-term investments would have maintained the Nabisco stock as a prudent long-term investment strategy, rather than selling them at their then-low market values."  (Doc. # 49, Ex. C, Second Am. Compl. ¶ 41.)  Accordingly, Defendants' Motion to Dismiss the breach of fiduciary duty claim against the Company Defendants is DENIED.

V.

For the reasons stated above, Defendants' Motion to Dismiss (Doc. # 78) is GRANTED with respect to the Committee Defendants and DENIED with respect to the Company Defendants.

This the day of May 31, 2007

   /s/ N. Carlton Tilley, Jr.   
United States District Judge