IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RICHARD G. TATUM, individually and on behalf of a class of all other persons similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:02CV00373 |
| R.J. REYNOLDS TOBACCO COMPANY; R.J. REYNOLDS TOBACCO HOLDINGS, INC.; THE RJR EMPLOYEE BENEFITS COMMITTEE OF THE R.J. REYNOLDS TOBACCO COMPANY CAPITAL INVESTMENT PLAN; THE RJR PENSION INVESTMENT COMMITTEE OF THE R.J. REYNOLDS TOBACCO COMPANY CAPITAL INVESTMENT PLAN, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

TILLEY, District Judge

This action arises from a dispute regarding the alleged mismanagement of a retirement plan and is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). This matter is currently before the Court on Plaintiff's Motion to Certify Class [Doc. # 118]. For the reasons set forth below, the Motion to Certify Class [Doc. # 118] is GRANTED.

I.

In or about March 1999, RJR Nabisco Holdings Corp. ("RJR Nabisco"), which was the parent company of R.J. Reynolds Tobacco Company ("RJR

Tobacco") and Nabisco Holdings Corp. ("Nabisco Holdings"), decided to separate its tobacco and food businesses by spinning off RJR Tobacco as a separate company.

As an employee of RJR Tobacco, Mr. Tatum participated in the RJR Nabisco Capital Investment Plan (the "Original Plan"), and invested in the RJR Nabisco common stock fund and the Nabisco Holdings common stock fund (collectively, the "Nabisco stock funds"). When RJR Nabisco decided to spin off RJR Tobacco as a separate company, it was also determined that the Original Plan would be divided into two separate retirement plans following the spin-off – one for RJR Tobacco employees, the R.J. Reynolds Tobacco Company Capital Investment Plan (the "Tobacco Plan" or "Plan"), and one for Nabisco Holdings employees.

In or about March 1999, officers, employees, and/or agents of RJR Tobacco and RJR Tobacco Holdings decided that: (1) the investment options for participants in the Tobacco Plan would remain the same, except that the Nabisco stock funds would be frozen from any active investment; (2) the Nabisco stock funds would remain frozen for approximately six months; (3) the Tobacco Plan would divest itself of the Nabisco stock funds approximately six months in the future; and (4) during the frozen period, Tobacco Plan participants would be informed that they could sell their Nabisco stock.

At the time the Nabisco stock funds were frozen, Nabisco Group Holdings' stock was selling at approximately $21 per share and Nabisco Holdings' stock was

selling at approximately $42 per share. The market value of the Nabisco stocks declined continuously until the eventual divestiture date.

In or about October 1999, despite the declining value of the Nabisco stocks, the Company Defendants decided that the decision made prior to the spin-off to divest the Nabisco stock funds would not be reconsidered. During the same time frame, Tobacco Plan participants were informed that the frozen Nabisco stocks would be eliminated as plan investment options on January 31, 2000.

On January 31, 2000, the Tobacco Plan sold all Nabisco stocks at a substantial loss. Between the June 15, 1999 spin-off and the January 31, 2000 stock sale, Nabisco Group Holdings' stock fell 60% to approximately $8.50 per share; Nabisco Holdings' stock fell nearly 30% to approximately $30 per share.

Mr. Tatum objected to the Tobacco Plan's sale of the Nabisco stocks and requested that the Plan maintain its Nabisco holdings to allow the stocks to rebound from their record low market values. The Plan fiduciaries refused to allow Mr. Tatum and others to maintain the Nabisco stocks allocated to their accounts. Mr. Tatum alleges that throughout the time period from the June 15, 1999 spin-off through the January 31, 2000 divestiture, market analysts were advising investors to buy or hold Nabisco stocks despite the declining market value and predicting that the Nabisco stocks would rebound. In fact, by late June 2000, the price of Nabisco Group Holdings' stock was approximately $30 per share and the price of Nabisco Holdings' stock was approximately $55 per share.

In May 2002, Mr. Tatum instituted this action on behalf of himself and a class of similarly situated Tobacco Plan participants pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), seeking to recover losses to the Tobacco Plan resulting from the January 31, 2000 sale of the Nabisco stocks. Mr. Tatum alleges that Defendants breached their fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by failing to reconsider and investigate the decision to eliminate the Nabisco stock funds from the Tobacco Plan.

II.

Certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure involves a two-step analysis. Partington v. Am. Int'l Specialty Lines Ins. Co., 443 F.3d 334, 340 (4th Cir. 2006). First, a party seeking certification must demonstrate that he has met the four prerequisites provided in Rule 23(a). Next, the moving party must show that the class action is maintainable under at least one of the three categories set forth in Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614, 117 S. Ct. 2231, 2245 (1997). An evaluation of the merits is not part of a Rule 23 analysis, however, "the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits." Gariety v. Grant Thornton, LLP, 368 F.3d 356, 366 (4th Cir. 2004).

A.

A party seeking class certification must first establish each of the four prerequisites set out in Rule 23(a). A member of a class may sue as a

representative party on behalf of all class members if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party is typical of the claims of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy.

1.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Practicability of joinder depends on various factors, such as "the size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion." Baltimore v. Laborers' Int'l Union of N. Am., No. 93-1810, 1995 WL 578084, at *1 (4th Cir. Oct. 2, 1995). No specific class size is necessary to maintain a class action. Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984).

In this case, Mr. Tatum seeks certification of the following class:

> All participants in the R.J. Reynolds Tobacco Company Capital Investment Plan ("Plan") for whose individual accounts the Plan held shares of Nabisco Group Holdings (NGH) common stock and/or Nabisco (NA) common stock at any time from June 14, 1999 and including January 31, 2000. The following individuals are excluded from the Class: officers and directors of R.J. Reynolds Tobacco Holdings, Inc., R.J. Reynolds Tobacco Company, RJR Industries, Inc., R.J. Reynolds Tobacco International, Inc., and RJR Tobacco Consolidated IHC, Inc.; members of their immediate families; and the heirs, successors or assigns of any of the foregoing.

Mr. Tatum asserts that this class consists of over 1000 Plan participants. In their Brief in Opposition to Plaintiff's Motion for Class Certification, Defendants state that the class, as defined in Mr. Tatum's proposed definition, would consist of 3,549 members – more than enough to satisfy the numerosity requirement. [Doc. # 131 at 14]. Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 425 (4th Cir. 2003) (affirming district court order finding that "1400 employees plus their families . . . easily" satisfied the numerosity requirement of Rule 23); Cent. Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 183 (4th Cir.1993) (affirming district court finding that "480 potential class members would easily satisfy the numerosity requirement"); Lilly v. Harris-Teeter Supermarket, 720 F.2d 326, 333 (4th Cir. 1983) (229 class members was "easily enough to demonstrate the existence of the class"); Bates v. Tenco Servs., Inc., 132 F.R.D. 160, 163 (D.S.C. 1990) (finding that "a lawsuit with potentially one hundred and eighty plaintiffs presents logistical problems that make the practicality of permissive joinder dubious"). Thus, Mr. Tatum has satisfied the numerosity requirement of Rule 23(a)(1).

2.

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) "does not require that all, or even most issues be common." Cent. Wesleyan, 143 F.R.D. at 636, aff'd 6 F.3d 177 (4th Cir. 1993); Bussian v. DaimlerChrysler Corp., No. 1:04CV00387, 2007 WL

6

1752059, at *5 (M.D.N.C. June 18, 2007) (explaining that the test for commonality "is not demanding, and is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members"). In fact, "[t]he commonality requirement is relatively easy to satisfy." Buchanan v. Consol. Stores Corp., 217 F.R.D. 178, 187 (D. Md. 2003).

In this case, Mr. Tatum asserts that issues common to the proposed class include: (1) whether defendants were fiduciaries of the Plan during the time period at issue; (2) whether Defendants breached their fiduciary duty by deciding in June 1999 to eliminate the Nabisco stock funds from the Tobacco Plan; (3) whether Defendants breached their fiduciary duty by failing to reconsider and investigate the decision to eliminate the Nabisco stock funds from the Tobacco Plan; and (4) whether the Plan was damaged by these alleged breaches of fiduciary duty.  Each of these common questions identified by Mr. Tatum is independently sufficient to satisfy the commonality requirement of Rule 23(a)(2). Banyai v. Mazur, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries."). Thus, Mr. Tatum has satisfied Rule 23(a)(2).

3.

Rule 23(a)(3) requires that the claims of the representative party be typical of the claims of the class. The typicality requirement of Rule 23(a)(3) overlaps

7

with the commonality requirement of Rule 23(a)(2).  However, while the commonality requirement focuses on the claims of the class as a whole, the typicality requirement focuses on the named plaintiff's claim.  See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998).   The typicality requirement is met where "the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members."  Rodger v. Elec. Data Sys. Corp., 160 F.R.D. 532, 538 (E.D.N.C.1995).

Mr. Tatum asserts that his claim is typical of the claims of the putative class members because it arises from the same course of conduct by Defendants that gives rise to the claims of the other class members – "the investigation that Defendants did or did not take" and the decision to eliminate the Nabisco stock from the Tobacco Plan.

a.

Defendants assert that Mr. Tatum's claim is not typical of the claims of the putative class members who executed releases after their Nabisco stock was sold.  Defendants' argument is premised on their characterization of Mr. Tatum's claim as an individual claim for damage to his personal account within the Plan.  However, the Second Amended Complaint clearly states that Mr. Tatum has brought this suit on behalf of the Plan under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

It is undisputed that actions brought under section 502(a)(2) are derivative in

nature – they focus on the injury to the Plan from the fiduciary's alleged breach, rather than on injury to the individual Plan participants. As such, a release executed by a Plan participant cannot release the claims of the Plan. See In re Polaroid ERISA Litig., 240 F.R.D. 65, 75 (S.D.N.Y. 2006) (noting that "numerous courts have held that under ERISA, individuals do not have the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty" and citing cases); In re Aquila ERISA Litig., 237 F.R.D. 202, 210 (W.D. Mo. 2006) ("As a matter of law, a plan participant cannot release the Plans' claims."); In re Williams Cos. ERISA Litig., 231 F.R.D. 416, 423 (N.D. Ok. 2005) (concluding that releases executed by some plan participants does not defeat class certification and noting that "the claims here are brought on behalf of the Plan, and a participant cannot release the Plan's claims, as a matter of law").

While it may become necessary at some point in the future to exclude these individuals or to establish a sub-class of individuals who have executed releases, at this stage in the litigation the individuals who executed releases will be included in the class. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); see Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

b.

Defendants also assert that Mr. Tatum's claim is not typical of all members of the putative class because some of the Plan participants who would be included in the class sold their stock before the January 31, 2000 divestiture date. Defendants claim that some of these putative class members sold their Nabisco stock "for reasons wholly unrelated to the freezing of the Nabisco funds and the announcement that both would be eliminated in the future." [Doc. # 131 at 9-10]. Defendants assert it will be necessary to conduct an individualized determination regarding why each individual sold his Nabisco stock.

Similarly, Defendants assert that class certification is inappropriate because damages calculations will require individual determinations pursuant to ERISA § 404(c). Section 404(c) is an affirmative defense, which provides that a fiduciary will not be liable to a Plan participant "for any loss, or by reason of any breach, which results from such paticiplant's . . . exercise of control" over his account. ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B). In short, Defendants assert that because Plan participants, including Mr. Tatum, had the ability to choose when they would sell their Nabisco stock, section 404(c) would require individual evaluation of each Plan participant's decision-making with respect to the Nabisco stock.

As discussed above, however, Mr. Tatum has not brought this suit seeking recovery of damages sustained by his personal account. Rather, Mr. Tatum's claim

10

is brought on behalf of the Plan as a whole to recover benefits owed under the Plan. As such "[a]ny recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA." Brieger v. Tellabs, Inc., 245 F.R.D. 345, 357 (N.D. Ill. 2007).

Moreover, in a breach of fiduciary duty case seeking recovery for the Plan as a whole, the focus is the conduct of the Defendants – not the conduct of the Plan participants. In re Ikon Office Solutions, 191 F.R.D. 457, 465 (E.D. Pa. 2000) (explaining that "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs"); DiFelice v. U.S. Airways, Inc., 235 F.R.D. 70, 78 (E.D. Va. 2006), aff'd, 497 F.3d 410 (4th Cir. 2007) (concluding that "individual issues of loss causation do not predominate, indeed are not relevant, unless and until it becomes necessary to allocate any Plan recovery to participants"). As the Fourth Circuit has explained, "although section 404(c) does limit a fiduciary's liability for losses that occur when participants make poor choices from a satisfactory menu of options, it does not insulate a fiduciary from liability for assembling an imprudent menu in the first instance." DiFelice, 497 F.3d at 418 n.3 (4th Cir. 2007).

In this case, Mr. Tatum has asserted that the Plan suffered damage as a result of Defendants' decision to sell the Nabisco stock. "In effect, class members, as the Plan's advocates, are each bringing the exact same suit." In re Elec. Data Sys. Corp., 224 F.R.D. 613 (E.D. Tex. 2004). Because each class member has the

same claim, Mr. Tatum's claim is typical of the class. The Rule 23(a)(3) typicality prerequisite has been met in this case.

4.

Under Rule 23(a)(4), a class may be certified only if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis under Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). The adequacy requirement "also factors in competency and conflicts of class counsel." Id.; see also Fed. R. Civ. P. 23(g).

As noted above, there are no conflicts among class members because each class member is bringing suit on the behalf of the Plan. Moreover, Defendants have not challenged the capabilities or qualification of Mr. Tatum's counsel. In addition, the Court has reviewed the qualifications of proposed class counsel and finds that they meet the requirements of Rule 23(g). As such, the Rule 23(a)(4) adequacy of representation prerequisite has been met.

B.

If all four requirements of Rule 23(a) have been satisfied, a putative class plaintiff must show that any one of the three criteria in Rule 23(b) are met before the class can be certified. This inquiry focuses on whether the individual claims of the class members overwhelm the claims of the class as a whole and whether;

12

considering all of the factors, class treatment is superior to other forms of adjudication to resolve such claims. Mr. Tatum seeks certification pursuant to Rules 23(b)(1) and 23(b)(2).

A class may be certified under 23(b)(1) if separate actions by class members "would create a risk of inconsistent or varying adjudications . . . that would establish incompatible standards of conduct" for the defendant. Fed. R. Civ. P. 23(b)(1)(A). A class may also be established under 23(b)(1) if separate actions would create a risk that individual actions would be "dispositive of the interests of other members not parties to the individual" suits or "would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). In essence, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." Ikon Office Solutions, 191 F.R.D. at 466.

The Advisory Committee Note to Rule 23 states that certification under Rule 23(b)(1)(B) is appropriate in "an action which charges breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." See also Ortiz v. Fibreboard Corp., 527 U.S. 815, 833-34 (1999) (quoting Advisory Committee Note for same proposition).

In the instant case, Mr. Tatum brings his claim on behalf of the Plan and

seeks recovery to the Plan. In this posture, resolution of this case "would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan." Brieger, 245 F.R.D. at 357. Because "adjudication of the claim[ ] involves the recovery and distribution of Plan assets on behalf of the Plan rather than determination of personal causes of action brought by individuals, . . . separate actions by individual plaintiffs would impair the ability of other participants to protect their interests if the suit proceeded outside of a class context." Id. Therefore, Mr. Tatum's claim meets the requirements of Rule 23(b)(1)(B).

Indeed, numerous courts have held that "'ERISA litigation [involving a claim for breach of fiduciary duty] presents a paradigmatic example of a (b)(1) class'"). In re Global Crossing Ltd. Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y.2004) (quoting Kolar v. Rite Aid Corp., 2003 U.S. Dist. LEXIS 3646, 2003 WL 1257272 (E.D. Pa. March 11, 2003)); In re Williams, 231 F.R.D. at 425 (holding that "due to ERISA's distinctive 'representative capacity' and remedial provisions, class treatment under Rule 23(b)(1)(B) is appropriate"); In re Ikon, 191 F.R.D. at 466 ("given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief."); Koch v. Dwyer, Case No. 98 Civ. 5519, 2001 WL 289972, at *5 (S.D.N.Y. March 23, 2001) ("Since Plaintiff is seeking relief on behalf of both Plans as a whole, prosecution of separate actions by individual members would create a

risk of adjudications which would be dispositive of the interests of the other members not parties to such adjudications."); In re Elec. Data Sys., 224 F.R.D. at 628 ("Separate adjudication of these issues would be dispositive of other class members' interests.").

It is not necessary to consider Mr. Tatum's argument that certification is also proper under Rule 23(b)(1)(A) or 23(b)(2) because it has been determined that the claim for relief is properly certified as a class claim pursuant to Rule 23(b)(1)(B),.

III.

Defendants assert that individuals who cashed out their Plan accounts should be excluded from the class because they do not have standing. The Fourth Circuit recently rejected Defendants' argument. In re Mutual Funds Investment Litig., --- F.3d ---, 2008 WL 2406211 at * 7 (4th Cir. June 16, 2008) (concluding that "participants in defined contribution plans controlled by ERISA have colorable claims [and thus standing under section 502(a)(2)] against the fiduciaries of their plans when they allege that their individual accounts in the plans were diminished by fraud or fiduciary breaches and that the amounts by which their accounts were diminished constitute part of the participants' benefits under the plans").

IV.

For the reasons set forth above, Mr. Tatum's claim for class certification is GRANTED.

This the day of September 29, 2008

                                             /s/ N. Carlton Tilley, Jr.
                                             United States District Judge